# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-1013V
### (Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
MENDY TATRO                          *
                                     *
                 Petitioner,         *     Filed: February 16, 2021
                                     *
        v.                           *
                                     *
SECRETARY OF HEALTH AND              *     Entitlement; Decision by Proffer; Damages;
HUMAN SERVICES                       *     Influenza ("Flu") Vaccine; Shoulder Injury
                                     *     Related to Vaccine Administration
                 Respondent.         *     ("SIRVA")
                                     *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Jimmy A. Zgheib*, Zgheib Sayad P.C., White Plains NY, for Petitioner.
*Lynn C. Schlie*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On July 13, 2018, Petitioner Mendy Tatro filed a petition seeking compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleged that she developed a shoulder injury related to vaccine administration ("SIRVA") as a result of receiving an influenza ("flu") vaccine on November 8, 2017. Petition, ECF No. 1.

---

[1] Because this Decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

On February 12, 2021, Respondent filed an amended Rule 4(c) Report ("Respondent's Report"), stating that "Medical personnel at the Division of Injury Compensation Programs, Department of Health and Human Services have reviewed the petition and medical records filed in the case and determined that petitioner has satisfied the criteria set forth in the Vaccine Injury Table and the Qualifications and Aids to Interpretation.". Am. Resp's. Rep., ECF No. 48 at 7. "[B]ased on the record as it now stands, Petitioner has satisfied all legal prerequisites for compensation under the Vaccine Act." *Id*; *see also* 42 U.S.C. § 300aa-13(a)(1)(B); 42 U.S.C. § 300aa-11(c)(1)(D)(i).

Respondent filed a proffer on February 12, 2021 (ECF No. 48), agreeing to issue the following payments:

a.  a lump sum payment of **$166,695.33** for all damages, paid in the form of a check to Petitioner, Mendy Tatro.

These amounts represent all elements of compensation for all damages that would be available under § 300aa-15(a).

I adopt the parties' proffer attached hereto, and award compensation in the amount and on the terms set forth therein. I, therefore, award compensation in the amount of **a lump sum payment of $166,695.33, in the form of a check payable to Petitioner, Mendy Tatro**. The clerk of court is directed to enter judgment in accordance with this decision.[3]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**OFFICE OF SPECIAL MASTERS**

|  |  |  |
|---|---|---|
| MENDY TATRO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 18-1013V |
| v. | ) | Special Master Oler |
| | ) | ECF |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## RESPONDENT'S AMENDED RULE 4(c) REPORT AND PROFFER

On July 13, 2018, Mendy Tatro ("petitioner") filed a petition for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34, as amended ("Vaccine Act" or "Act"). Petitioner alleges that she suffered from a shoulder injury related to vaccine administration ("SIRVA") as a result of receiving an influenza ("flu") vaccine on November 8, 2017. Petition at 1. SIRVA is an injury listed on the Vaccine Injury Table ("Table") for the flu vaccine. See 42 C.F.R § 100.3(a)(XIV)(D).

On July 12, 2019, the Secretary of Health and Human Services ("respondent") filed his initial Rule 4(c) Report recommending that compensation be denied based on the facts of the case as reflected in the petitioner and petitioner's exhibits at the time of filing. ECF No. 22. On November 11, 2019, petitioner filed an expert report from Marko Bodor, M.D., a physical medicine and rehabilitation doctor. See Petitioner's Exhibit ("Pet. Ex.") 21. On March 2, 2020, respondent filed an expert report from orthopedist David Ring, M.D., Ph.D. See Respondent's Exhibit ("Resp. Ex.") A. Petitioner filed a supplemental report from Dr. Bodor on May 21,

2020. *See* Pet. Ex. 25. Petitioner also filed additional updated medical records and damages information. *See* Pet. Exs. 15-34.

After review of the additional filed evidence, and in accordance with the Rules of the United States Court of Federal Claims, Appendix B, Vaccine Rule 4(c), and Court orders, respondent submits the following as his amended report in response to the petition. For the reasons set forth below, it is respondent's position that compensation is appropriate under the terms of the Act for petitioner's SIRVA.

## I.     FACTUAL BACKGROUND

Petitioner was 33 years-old at the time of the subject flu vaccination on November 8, 2017. Pet. Ex. 4 at 57-58. Her medical history was significant for depression, anxiety, ovarian cysts, acne, Meniere's disease, and several occasions of short-lived neurological symptoms in the left hand in 2015. *Id.* at 57-58, 79.

On November 27, 2017, petitioner presented to Dr. Douglas O'Neill of Williamstown Medical. Pet. Ex. 4 at 7-8. At that time, petitioner reported left sided arm pain starting three weeks prior, and it was noted that "she received the influenza vaccine at work and the next morning woke up with a constant dull pain in her left arm…since the pain occurred the day after a flu shot she is very concerned it might have caused her symptoms." *Id*. Petitioner reported that her "neck feels tight…pain radiating down her arm and associated with palmar numbness… cannot lift her arm without exacerbation." *Id*. On physical examination, petitioner had pain with range of motion ("ROM"), negative tinels/phalen sign, and posterior shoulder/deltoid pain when compression her neck while facing the left side and normal sensation. *Id*. Dr. O'Neill wrote "cervical origin vs tendinopathy of her L shoulder," stated that "supporting cervical includes a

2

positive Spurling sign and numbness in her right hand," and that the injury "does not appear to be frozen shoulder" as "passive ROM is not limited." *Id*.

On November 28, 2017, petitioner visited the emergency department at Berkshire Medical Center. Pet. Ex. 5 at 15-19. At that time, she complained of left shoulder pain which "started after flu vaccine," and noted that the pain "radiates somewhat down the arm," but "not past elbow area," and that there was "some tingling in left upper extremity." *Id*. A physical examination showed full ROM, but with pain when she lifted her arm above the shoulder level, and tenderness over the deltoid. *Id*. Her diagnoses at discharge included tendinitis of the left shoulder. *Id*.

On December 13, 2017, petitioner presented to Dr. O'Neill with complaints of left shoulder pain after her influenza vaccine. Pet. Ex. 4 at 5-6. Petitioner reported that her arm was "disabled," that "something [was] seriously wrong" and that she had trouble raising her arm. *Id*. On physical examination, she had decreased ROM in her left arm, and she was diagnosed with rotator cuff tendinopathy. *Id*. On January 15, 2018, petitioner had a left shoulder x-ray, which returned normal results. Pet. Ex. 8 at 1. On January 22, 2018, petitioner presented to Mahlon Bradley, M.D. at Berkshire Orthopaedic Association regarding her continued left shoulder complaints. Pet. Ex. 6 at 2. She related her shoulder pain to her flu shot, and reported she had pain, swelling, stiffness, weakness, and soreness ranging from mild to moderate in severity. *Id.* Dr. Bradley discussed treatment options with petitioner, and petitioner elected to receive a steroid injection to her left shoulder. *Id.* at 3.

On February 15, 2018, petitioner began physical therapy ("PT") at Berkshire PT and Wellness, and she reported left shoulder pain on the day of and the day following her November 8, 2017, influenza vaccination. Pet. Ex. 7 at 2. Petitioner reportedly had been feeling some

3

tingling, but denied current numbness/paresthesia. *Id*. The examination showed decreased ROM and strength. *Id.* She attended PT sessions on March 22, 2018 (the records note February 22, 2018, with an apparent correction to March 22, 2018), and March 31, 2018, and continued to report pain in the shoulder. *Id*. at 3-5. On April 7, 2018, she noted that she had some relief for an hour after PT, but then tightness returned. *Id*.

On April 30, 2018, petitioner had an MRI of her left shoulder, which revealed tiny subcortical cystic foci in posterior aspect of the greater tuberosity with a note that the findings "may be due to erosion" and that there was an "intact rotator cuff." Pet. Ex. 8 at 2-3.

On May 22, 2018, petitioner saw Dr. Michael Nancollas, an orthopedist with Berkshire Hand to Shoulder Center for a second opinion regarding her left shoulder. Pet. Ex. 9 at 2-3. On physical examination, she had tenderness of the subacromial bursa, positive Speed/Obrien's testing, and normal sensation. *Id*. Dr. Nancollas' diagnoses included possible biceps tendinitis localized to the anterior aspect of the shoulder, however, Dr. Nancollas stated he "could not associate with flu shot." *Id*. at 4. Petitioner also received a second steroid injection to help alleviate her pain. *Id.* In a follow-up with Dr. Nancollas on June 4, 2018, petitioner noted she continued to have left shoulder pain. *Id*. at 5-7.

On June 12, 2018, petitioner had an assessment of moderately prominent [superior labral tear from anterior to posterior] (SLAP) lesion, suggestion of a small displaced tear mid posterior labrum. Pet. Ex. 8 at 4. On June 18, 2018, petitioner again saw Dr. Nancollas, who noted that petitioner continued to have left shoulder pain. Pet. Ex. 9 at 12-14. Dr. Nancollas wrote that "the MRI shows evidence of pathology to the superior labrum" and that "there is a posterior tear." He stated that he "could not relate this to her prior flu shot injection" and reported that

4

"typically these tears occur from extended overhead activity or trauma." *Id.* Treatment options included observation, physical therapy, cortisone injections, and surgery. *Id.*

On August 3, 2018, petitioner had labral debridement arthroscopically at Fairview Hospital by Dr. Nancollas. Pet. Ex. 11 at 16-17. The operative report indicated significant synovitis in posterior superior labrum, which was debrided, and thickening of joint capsule suggested some degree of adhesive capsulitis. *Id.* On September 7, 2018, petitioner returned to Dr. Nancollas, and reported continued pain with certain movements of her left arm. Pet. Ex. 12 at 5. Dr. Nacollars' diagnoses included a glenoid labrum tear. *Id.* On December 3, 2018, petitioner returned to Dr. Nancollas and received a third steroid injection to her left shoulder. Pet. Ex. 15 at 3.

On January 30, 2019, petitioner presented to Michael Kolosky, M.D. at Massachusetts General Hospital for a third opinion on her left shoulder pain. Pet. Ex. 16 at 8. Petitioner noted that her pain and ROM had improved, but she was still unhappy with her progress. *Id.* On physical examination, Dr. Kolosky noted that petitioner had mild tenderness to palpation of the biceps and small loss of ROM. *Id.* at 9. Dr. Kolosky felt she may have had adhesive capsulitis, but was receiving the proper treatment for it. *Id.* He further noted that he felt her "her symptoms and disability are out of proportion to her clinical exam findings." *Id.* He thought that she might be experiencing neuropathic pain, and suggested she follow up with a neurologist. *Id.*

On April 17, 2019, petitioner saw neurologist Thomas Kwiatkowski, M.D., who diagnosed her with left shoulder pain and ordered an EMG to evaluate for neurological causes. Pet. Ex. 17 at 10. The EMG of her left shoulder, however, was normal and revealed no electrophysiological evidence of cervical radiculopathy, polyneuropathy, or peripheral nerve entrapment. *Id.* at 9. Petitioner returned to Dr. Kwiatkowski on July 10, 2019, with continued

left shoulder complaints. *Id.* at 6. At that time, he noted that she had "myalgia, muscle injury with no evidence of neurologic disease." *Id.* at 7.

On July 29, 2019, petitioner saw Dr. Nancollas, who noted that petitioner had approximately 50% improvement since her left shoulder surgery. Pet. Ex. 15 at 9-10. He reviewed an MRI she had on July 24, 2019, and noted that she may have a possible supraspinatus tear, likely secondary to the arthroscopic portal for the surgery. *Id.* Dr. Nancollas also noted that she had ongoing adhesive capsulitis and suggested a second surgery, an arthroscopic debridement with possible capsular release. *Id.* On August 13, 2019, petitioner underwent arthroscopic surgery, and the findings included revealed an anterior labrum tea, which was repaired. Pet. Ex. 18 at 8-9.

On October 24, 2019, petitioner met with her expert in the present case, and treating physician, Dr. Bodor. Pet. Ex. 21 at 4. An initial physical examination of petitioner's left shoulder revealed tenderness to palpation at the insertion of the teres minor, limitations in ROM, and pain with internal and external passive rotation. *Id.* Dr. Bodor administered a lidocaine and ropivacaine injection in order to further evaluate petitioner's shoulder and was able to reduce her pain and improve her ROM. *Id.* at 5. The following day, on October 25, 2019, Dr. Bodor performed a debridement of petitioner's teres minor and cortical bone under local anesthesia. *Id.* Dr. Bodor concluded that petitioner' primary pain generator was her teres minor, "where the vaccine most likely had been deposited and was still causing pain via a chronic degenerative/inflammatory response." *Id.*

On October 28, 2019, Dr. Bodor and petitioner spoke via phone. *Id.* Petitioner reported that she was able to sleep on her shoulder without pain, and raise her arm and abduct her shoulder fully without pain. *Id.* On November 8, 2019, Dr. Bodor had a two-week post-

6

operative follow up evaluation with petitioner. *Id.* He noted that her qDASH score, which was 69 prior to her surgery, was now 2, and that "there is a high likelihood the score will go down to 0 in the next month." *Id.* He concluded, that petitioner was "essentially cured at this time."

## ANALYSIS

Medical personnel at the Division of Injury Compensation Programs, Department of Health and Human Services have reviewed the petition and medical records filed in the case and determined that petitioner has satisfied the criteria set forth in the Vaccine Injury Table and the Qualifications and Aids to Interpretation ("QAI"). That is, petitioner had no relevant history of pain, inflammation, or dysfunction in her left shoulder; her pain and reduced range of motion occurred within 48 hours of receipt of an intramuscular vaccination; her symptoms were limited to the shoulder in which the vaccine was administered; and no other condition or abnormality was identified to explain her symptoms. 42 C.F.R. § 100.3(a), (c)(10). The scope of damages to be awarded is limited to petitioner's SIRVA and its related sequelae only. Therefore, based on the record as it now stands, petitioner has satisfied all legal prerequisites for compensation under the Vaccine Act. *See* 42 U.S.C. § 300aa-13(a)(1)(B); 42 U.S.C. § 300aa-11(c)(1)(D)(i).

## PROFFER ON AWARD OF COMPENSATION

I.    **Items of Compensation**

Respondent proffers that petitioner should be awarded $160,000.00 for pain and suffering and $6,695.33 for petitioner's out of pocket expenses. *See* 42 U.S.C. § 300aa-15(a)(4). Petitioner agrees.

This amount represent all elements of compensation to which petitioner is entitled under 42 U.S.C. § 300aa-15(a). Petitioner agrees.

## II.  **Form of the Award**

Petitioner is a competent adult.  Evidence of guardianship is not required in this case. Respondent recommends that the compensation provided to petitioner should be made through a lump sum payment as described below and requests that the Special Master's decision and the Court's judgment award the following: a lump sum payment of $166,695.33, in the form of a check payable to petitioner.

<div style="margin-left: 45%;">

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

C. SALVATORE D'ALESSIO
Acting Director
Torts Branch, Civil Division

HEATHER L. PEARLMAN
Acting Deputy Director
Torts Branch, Civil Division

ALEXIS B. BABCOCK
Assistant Director
Torts Branch, Civil Division

/s/ Lynn C. Schlie
LYNN C. SCHLIE
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, D.C. 20044-0146
Tel: (202) 616-3667
Fax: (202) 616-4310

</div>

DATED:  February 12, 2021